UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMI FLOYD, | |
| Plaintiff, | Civil Action No: |
| - against - | 23-CV-1096(ALC-SC) |
| NEW YORK PUBLIC RADIO, | |
| Defendants. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

Joan M. Gilbride
Erica Bianco
KAUFMAN BORGEEST & RYAN LLP
875 Third Ave 5th Floor
New York, New York 10022
Telephone: 212.980.9600
Facsimile: 212.980.9291

9275582

## TABLE OF CONTENTS

**MEMORANDUM OF LAW** .................................................................................................. **7**

**PRELIMINARY STATEMENT** ........................................................................................... **7**

**STATEMENT OF FACTS** .................................................................................................... **8**

    **1. Floyd's Employment at NYPR** ........................................................................**8**

    **2. Floyd's Conclusory Allegations of a Hostile Work Environment** ...................................**9**

    **3. Floyd's Allegations Concerning Alleged Conduct Toward Other Black Employees** .......**9**

    **4. Floyd's Allegations Concerning the Midday Host and Editor-in-Chief Jobs**.................**10**

    **5. Floyd's General Allegations Concerning Disparity in Pay and Resources** ...................**11**

    **6. Floyd's Allegations Concerning Media Reports of Her Plagiarism**.............................**11**

**PROCEDURAL HISTORY** ................................................................................................. **12**

**LEGAL STANDARD** ........................................................................................................... **12**

**POINT I**
**Plaintiff Fails to Allege a Plausible Hostile Work  Environment Claim under 42 U.S.C. § 1981 and the NYSHRL** ...................................................................................................... **13**

**POINT II**
**Plaintiff Fails to State a Claim for Race  Discrimination under 42 U.S.C. § 1981 and the NYSHRL**.............................................................................................................................. **16**

**POINT III**
**Plaintiff Fails to State a Claim for Retaliation  Based on Race under 42 U.S.C. § 1981 and the NYSHRL**.............................................................................................................................. **18**

i

**POINT IV**

**<u>Plaintiff Fails to State Claims for Discrimination, Retaliation or Hostile Work Environment Based on Race under the NYCHRL</u>** ..................................................................................... **19**

**POINT X**

**<u>Plaintiff's Claims Based on Acts Prior to October 2018 Are Time-Barred under 42 U.S.C § 1981</u>** ............................................................................................... **20**

**POINT VI**

**<u>Plaintiff's Claims Based on Acts Prior to October 2019 Are Time-Barred under the NYSHRL and the NYCHRL</u>** .......................................................................................... **21**

**POINT VII**

**<u>The Continuing Violation Doctrine Does Not Apply to Plaintiff's Claims</u>** ....................................... **22**

**POINT VIII**

**Plaintiff Fails to State a Claim for Pay Inequality under New York Labor Law § 194** ................. **24**

**CONCLUSION** ........................................................................................................... **25**

9275582

# TABLE OF AUTHORITIES

## Cases

*Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002 ................................................................11

*Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018) ......................................16

*Ashcroft v. Iqbal*, 556 U.S. 662, 679(2009) ...............................................................................10

*Batchelor v. City of New York,* 12 F. Supp. 3d 458, 478 (E.D.N.Y. 2014)..................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...............................................................10

*Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011)...............................18

*Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 205 (E.D.N.Y. 2014)..........................20

*Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209–10 (E.D.N.Y. 2014) .........................14

*Brown v. Daikin Am., Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) ....................................................10

*Cates v. Trans World Airlines, Inc.* 561 F.2d 1064, 1073 (2d Cir. 1977)...................................19

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) ..............................................6

*Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 421 (E.D.N.Y. 2014) ................................................14

*Crosland v. City of New York*, 140 F.Supp.2d 300, 308 (S.D.N.Y. 2001)...................................21

*Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) .....................................21

*Davis-Garett*, 921 F.3d at 42; *Chin v. Port Auth. Of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012) .........................................................................................................................21

9275582

*Davis–Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 CV 7586(GBD), 2011 WL 4000997, at *11
(S.D.N.Y., Aug. 19, 2011), aff'd, 488 Fed. App'x. 530 (2d Cir. 2012)....................................12

*De La Pena v. Metropolitan Life Ins. Co.*, 953 F. Supp. 2d 393 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98
(2d Cir. 2014)............................................................................................................................12

*Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 79 (E.D.N.Y. 2002) ...................20

*Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).............................................................11

*Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)............................................14

*Golston–Green v. City of New York*, 184 A.D.3d at 38 (2d Dep't 2020) ....................................17

*Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 194 (E.D.N.Y. 2016) ................14, 16

*Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) ....................................................................16

*Isbell v. City of New York*, 316 F. Supp. 3d, 571, 591 (2018)....................................................12

*Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 228–29 (E.D.N.Y. 2016) ..................17

*Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 226 (E.D.N.Y. 2014) ...................................12

*Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) .................................................18

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-695 (KMK), 2023 WL 2691622, at *26
(S.D.N.Y. Mar. 29, 2023) ..........................................................................................................12

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) ...........................................22

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997) .........................................21

*Lightfoot v. Union Carbide Corp.*, 110 F.3d at 907; *Crosland*, 140 F.Supp.2d at 308..............21

*Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) ........................................11

9275582

*Littlejohn v. City of New York*, *supra*, at 321 ............................................................................ 13

*Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 256 (E.D.N.Y. 2016) ........................................ 11

*McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) .................................................................. 15

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ............................ 17

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ............................................................ 20

*Pollis v. New Sch. For Social Research*, 132 F.3d 115, 119 (2d Cir.1997) ................................................ 21

*Russell v. County of Nassau*, 696 F.Supp.2d 213, 230 (E.D.N.Y. 2010) ................................................ 19

*Taylor v. City of New York*, 207 F.Supp.3d 293, 301-02 (S.D.N.Y. 2016) .............................................. 19

*Valtchev v. City of New York*, 400 F. App'x 586, 588–89 (2d Cir. 2010) ................................................ 20

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) .............................................. 14

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) .............................................. 17

## **Rules**

§ 1658 .............................................................................................................................................. 18

§ 1981 ........................................................................................................................................ 14, 18

42 U.S.C. § 1981 ................................................................................................................................ 5

Fed. R. Civ. P. 12(b)(6) .................................................................................................................... 10

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 5

N.Y. C.P.L.R. § 214(2) .................................................................................................................... 19

9275582

N.Y.C. Admin. Code § 8–502(d) ........................................................................................................ 19

New York State Labor Law § 194 ....................................................................................................... 5

New York's Equal Pay Act ("EPA") ................................................................................................... 22

Rule 12(b)(6) .......................................................................................................................................... 11

the New York City Human Rights Law ("NYCHRL") ............................................................... 5

## MEMORANDUM OF LAW

Defendant New York Public Radio ("NYPR") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint ("FAC") filed by Plaintiff Jami Floyd ("Floyd") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This action arises from Floyd's employment by NYPR from 2015 to April 2022, during which time she served as a radio show host, editor and, finally, the director of NYPR's Race and Justice Unit until her resignation.  (FAC, ¶¶ 2, 19, 42, 46.)  Throughout her time at NYPR, she was given regular pay increases, promotions, and even the resources and support to create her own newsroom desk, the aforementioned race and justice unit.  As show host, she was one of the highest paid when compared to hosts of analogous programs with similar skill requirements and responsibilities.  In this lawsuit, Floyd brings claims of hostile work environment, discrimination and retaliation against her former employer under 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and New York State Labor Law § 194.

Floyd is hoping that this Court will review her FAC and mistake its length for substantive merit.  The Court should not be fooled, as the FAC is entirely devoid of factual allegations sufficient to support each of the claims.  With respect to Plaintiff's hostile work environment claims, the conclusory allegations do not rise to the level of a hostile work environment.  And with respect to Plaintiff's discrimination and retaliation claims, she does not allege that any purported discrimination or retaliation was based upon her race or any protected activity.  Instead, Floyd makes bareboned and generalized allegations of mistreatment of people of color at NYPR, but fails to allege how she was subjected to discrimination or retaliation.  Nor does she allege any actionable

7

adverse employment action, let alone any causal connection between her race, any other protected characteristic or protected activity and such action. She claims she was denied an editor title, yet admits she was later given the title of "legal editor," and subsequently promoted to run the Race and Justice Unit until her resignation on or around April 4, 2022. Finally, most of Plaintiff's purported claims are barred by the applicable statutes of limitation.

**STATEMENT OF FACTS**[1]

### 1. Floyd's Employment at NYPR

Jami Floyd worked for NYPR as the local host for the National Public Radio news program *All Things Considered* from 2015 until 2020. (FAC, ¶¶ 19, 46.) While in this position, and upon her request, her title changed to "legal editor." (*Id.* ¶¶ 41-42.) In 2020, she was promoted to run NYPR's 's new Race and Justice Unit (*id.* ¶ 46), which was created at Floyd's request, first with the title of "senior editor," and eventually as "director." In November 2021, Floyd was reassigned from her writing and editing responsibilities after it was identified that four articles she authored while at the company contained plagiarism.[2] Thereafter, NYPR removed from its websites over 40 more plagiarized articles authored by Floyd.[3] She subsequently resigned on or around April 4, 2022. (FAC, ¶ 2.)

---

[1] Unless otherwise indicated, the "facts" recited herein are drawn from the FAC.

[2] *See* Marc Tracy, WNYC Retracts Four Articles on Its News Site, Gothamist, N.Y. TIMES (Nov. 19, 2021), available at https://www.nytimes.com/2021/11/19/business/media/wnyc-gothamist-jami-floyd.html. On a motion to dismiss, the court may consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002). Floyd references this article in the FAC and relied upon it in bringing her claims. (*See* FAC, ¶ 51.)

[3] *See, e.g.*, Thomas Barrabi, WNYC's Jami Floyd accused of plagiarism in 45 articles dating back to 2010, N.Y. POST (Apr. 4, 2022), available at https://nypost.com/2022/04/04/wnycs-jami-floyd-accused-of-plagiarism-in-45-articles-dating-back-to-2010/.

9275582

### 2. Floyd's Conclusory Allegations of a Hostile Work Environment

Floyd alleges that shortly after starting her employment, she "was bullied, demeaned, and undermined" and "hazed by supervisors." (*Id.* ¶¶ 21, 39.) She provides no actual facts to support these conclusions, but for claiming that when she was a local host, she had a different reporting structure compared to that of non-Black hosts, all of which Floyd summarily concludes was "race-based conduct." (*Id.* ¶ 39.) She also alleges, on the one hand, that she was "denied the opportunity to advance or receive plum assignments," "sidelin[ed]" and "prevent[ed]…from excelling" by management, and that her "editorial ideas were not supported," yet also admits that she was held out as a leader on issues of race and gender, received title changes, including to the title of "editor," and a promotion with greater editorial responsibilities during her tenure. (*Compare id.* ¶¶ 21-22, 41 *with id.* ¶¶ 42, 46.)

Floyd also claims that in 2017, she "complained about the sexually-charged work environment at WNYC" and as a result, the then-Vice President of News, Jim Schachter ("Schachter") unsuccessfully attempted to fire her. (*Id.* ¶¶ 25, 26.)

Floyd alleges that her voluntary inclusion in an editorial committee on or around May 2019 to determine the company's policy concerning use of the n-word on WNYC's airwaves was "exploitative," because it "require[d] significant time and emotional energy, with no extra compensation." (*Id.* ¶ 36.) Finally, Floyd makes conclusory and vague and allegations about her complaints of race discrimination not being appropriately investigated. (*Id.* ¶ 53.)

### 3. Floyd's Allegations Concerning Alleged Conduct Toward Other Black Employees

Floyd alleges that in 2018, Schachter stated, after a Black c-level executive was hired, "what's next, a Black president?," and that sometime before he left the company in July 2019, he told a group of attendees of an event from the New York Association of Black Journalists that "he

9275582

could not compete sartorially with all the Black people in the room" because "Black people would always out-dress him." (*Id*. ¶ 35.)

She also claims that a manager's statements to one reporter of color that they had "low metabolism" and to another, that the reporter did "not getting what we do here" were demonstrations of racial hostility. (*Id*. ¶ 47.) Floyd asserts that when these reporters were assigned to work on the Race and Justice Unit, she perceived this as a signal that her team was a "dumping ground" for "purportedly failing reporters of color." (*Id*. ¶ 47.) Floyd also claims, in conclusory fashion, that the company's supposed attempted "shutter[ing]" of "Radio Rookies," an ongoing initiative where New York City teenagers produce short radio stories that air on WNYC, was also racially hostile. (*Id*. ¶ 47.) Floyd makes generalized allegations that there was a lack of support for the Race and Justice Unit due to her race and complaints of discrimination. (*Id*. ¶ 49.)

### 4. Floyd's Allegations Concerning the Midday Host and Editor-in-Chief Jobs

Floyd alleges that in December of 2017, Schachter and then-Chief Content Officer, Dean Cappello, "promised" Floyd that she would be "elevate[d]" to host WNYC's midday radio show after the position became vacant. (*Id*. ¶ 28.) She claims that when a search committee to fill the vacant position was formed, and she was "forced to audition" —i.e., interview—for this role, she was "publicly humiliate[ed]." (*Id*. ¶ 29.) On July 18, 2018, Floyd was informed she did not get the midday host job. (*Id*. ¶ 30.) Floyd makes the conclusory allegations that Schachter and Cappello did not follow through with their supposed promises—and she did not get this job— "because of her race and her prior complaints about discriminatory and harassing conduct" at the company, and her "refusal to kowtow" to editors in the Newsroom. (*Id*. ¶¶ 28, 30.)

Floyd also asserts that she interviewed for the Editor-in-Chief position sometime between November 2019 and June 2020. (*Id*. ¶¶ 43-44.) She alleges, without any factual support, that she

did not get this job "because of her race and complaints about discriminatory conduct" at the company.  (*Id.* ¶ 44.)

### 5.  Floyd's General Allegations Concerning Disparity in Pay and Resources

Floyd alleges that when she was the local host of *All Things Considered*, she "did not have an office, staff or other appropriate support," while unidentified "Caucasian male counterparts" on unidentified "less demanding shows had large staffs and budgets."  (*Id*. ¶ 31.)  She also makes the unsupported claims that her salary at the time of between "$160,000 and $176,000" was "the same or less than" individuals who worked on different shows with different formats, host skill requirements, and responsibilities.  (*Id.* ¶ 32.)  Floyd summarily alleges that she believes she was continually paid less than non-Black employees to whom she should have been compared over several years.  (*Id.* ¶ 42.)

Floyd alleges that in 2020, after she was promoted to editor and changed roles from local host to head of the Race and Justice Unit, she made less in annual compensation than she did in her prior role.  (*Id.* ¶ 48.)  Floyd claims this "demonstrates" that she "was a victim of race discrimination and retaliation."  (*Id.*)

### 6.  Floyd's Allegations Concerning Media Reports of Her Plagiarism

Floyd claims that in 2021, a then-NYPR employee allegedly disclosed confidential information about Floyd to the media.  (*Id.* ¶ 51.)  Floyd claims that as a result, the New York Times published an article in November 2021 which "contained factual errors" about her.  (*Id.*)  The article detailed how NYPR removed from its websites four articles authored by Floyd after discovering plagiarism in those articles, and how Floyd was reassigned from her editing and writing duties.[4]  Plaintiff alleges that the company "condoned and acquiesced" in the supposed

---

[4] *See* Tracy, *supra* note 2, available at https://www.nytimes.com/2021/11/19/business/media/wnyc-gothamist-jami-floyd.html.

disclosure of confidential information because of her earlier "complaints of race discrimination," and that the disclosure itself was "race-based" because Floyd worked on the Race and Justice Unit. (*Id.* ¶ 51.)

## PROCEDURAL HISTORY

After NYPR identified and removed from its websites over 40 articles authored by Floyd that contained plagiarism, she resigned.  In August 2022, Plaintiff sent Defendant a demand letter, alleging race discrimination and retaliation claims against the company.  The parties then entered into a tolling agreement, effective October 17, 2022, which ended on February 9, 2023.  Plaintiff filed her complaint on February 9, 2023 and then filed an amended complaint on July 18, 2023. (Dkt. Nos. 1, 18.)

## <u>LEGAL STANDARD</u>

A motion to dismiss may be granted where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires factual allegations that "raise a right to relief above the speculative level." *Id.* at 555.   "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679(2009).  And although the plaintiff's factual allegations must be accepted as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Id.* at 678, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

9275582

**ARGUMENT**

**POINT I**

**Plaintiff Fails to Allege a Plausible Hostile Work
Environment Claim under 42 U.S.C. § 1981 and the NYSHRL**

Plaintiff's hostile work environment claim is predicated entirely on conclusory statements insufficient to survive a Rule 12(b)(6) motion.  To establish a hostile work environment claim, a plaintiff must allege that the workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.  *See Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015).  Hostile work environment claims are analytically identical under § 1981 and the NYSHRL.  *See Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 256 (E.D.N.Y. 2016).

In the Second Circuit "[p]roving the existence of a hostile work environment involves showing both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."  *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Harris*, 510 U.S. at 23).  To sustain a claim of hostile work environment, the plaintiff is required to plead either that "a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of [his] working environment."  *Batchelor v. City of New York,* 12 F. Supp. 3d 458, 478 (E.D.N.Y. 2014) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency."  *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-695 (KMK), 2023 WL 2691622, at *26 (S.D.N.Y.

13

Mar. 29, 2023) citing *Isbell v. City of New York*, 316 F. Supp. 3d, 571, 591 (2018). Allegations that a plaintiff experienced diminished job responsibilities and exclusion from staff meetings, was yelled at and disparaged, and received an increased workload of menial tasks, among other factors, are not enough to demonstrate conduct that was sufficiently severe or pervasive. *See Davis–Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 CV 7586(GBD), 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011), aff'd, 488 Fed. App'x. 530 (2d Cir. 2012).

*De La Pena v. Metropolitan Life Ins. Co.*, 953 F. Supp. 2d 393 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014) is instructive on the FAC's shortcomings in this case. There, plaintiff claimed that defendants subjected him to a hostile work environment due to his membership in a protected class, and alleged that: (i) on several occasions, "he perceived the defendants' actions as disrespectful, and  . . . offensive;" (ii) "the defendants embarrassed him in front of his peers, causing damage to his reputation;" (iii) his supervisor "made false accusations" about him that led him to be placed on a performance review plan, and "made comments that were politically incorrect which were also couched in racial animus;" and (iv) "he was forced to return to work" from disability leave "while another employee remained on leave undisturbed." *Id.* at 397, 415. The court found these allegations insufficient to allege a hostile work environment. *Id.* at 415. The court noted that such facts were not enough to support "a plausible inference that the complained of conduct was severe or pervasive enough to create an objectively hostile or abusive work environment in an objective person." *Id.* at 416; s*ee also Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 226 (E.D.N.Y. 2014) (finding plaintiff's allegations that similarly-situated employees were given less work restrictions, and given more opportunities for increased training and compensation "come nowhere close to the type and frequency of conduct sufficient to create a hostile work environment").

Like in *De La Pena* and *Johnson*, Plaintiff's allegations, whether considered individually or collectively, do not support a plausible inference that the complained of conduct was severe or pervasive enough to create an objectively hostile or abusive work environment to an objective person.  Plaintiff alleges she "fac[ed] a racially hostile work environment," where she (i) was "bullied," "demeaned," "undermined," and "hazed;" (ii) was "denied the opportunity to advance" or "receive plum assignments;" (iii) felt that her ideas were "not supported and mostly disregarded;" and (iv) had a different reporting structure when she was in the role of local host compared to that of non-Black hosts  (FAC, ¶¶ 21, 22, 39.)  However, the FAC contains no facts in support of these labels and conclusions, let alone any facts to demonstrate that racial animus motivated any purported conduct by Defendant, or that the vaguely alleged conduct was so severe or pervasive as to have altered the conditions of plaintiff's employment.  *See, e.g., Littlejohn v. City of New York*, *supra*, at 321 (allegations of negative statements about Littlejohn, harsh tones, distancing from plaintiff, declined meetings, being required to do logs, being replaced at meetings, wrongful reprimands, increased reporting, being told he did not "understand the culture" do not support a hostile work environment claim); *Davis–Molinia*, 2011 WL 4000997, at *11; *Johnson*, 58 F. Supp. at 226.

Likewise, Plaintiff's other allegations do not, and objectively could not, support a hostile work environment claim.  This includes Floyd's allegation concerning her inclusion in the editorial committee that decided NYPR's policy on use of the n-word on its airwaves, and her allegation that the company "condoned and acquiesced" in the supposed disclosure of confidential information which led to the publication of the New York Times article.  (FAC, ¶¶ 36, 51.)  Finally, Plaintiff's allegations concerning the "negative experiences" of other people of color at the

15

company (*Id.* ¶¶ 38, 52), are entirely conclusory and set forth no facts to support her own claim for a hostile work environment.

## POINT II

### Plaintiff Fails to State a Claim for Race
### Discrimination under 42 U.S.C. § 1981 and the NYSHRL

Similarly, Plaintiff's allegations are equally insufficient to support plausible claims of discrimination under either federal or state law. To state a claim of race discrimination under § 1981 and the NYSHRL,[5] a Plaintiff must allege that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action gave rise to an inference of discrimination. *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 421 (E.D.N.Y. 2014) (citation omitted). Significantly, Plaintiff cannot meet the third and fourth prongs required to establish that she was discriminated against on the basis of her race by Defendant, nor the second prong with respect to two positions for which she applied. To survive a motion to dismiss, a Plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason "either (1) directly, by alleging facts that show an intent to discriminate, or (2) indirectly, by alleging circumstances that give rise to a plausible inference of discrimination." *Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 194 (E.D.N.Y. 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

As an initial matter, Plaintiff fails to allege an actionable adverse employment action. An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)

---

[5] Employment discrimination claims brought under Section 1981, the NYSHRL, and the NYCHRL are subject to the same analysis as claims brought under Title VII. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209–10 (E.D.N.Y. 2014).

9275582

(quotations omitted).  Such actions could include "a termination of employment, a demotion, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.*

Plaintiff claims she did not get two jobs for which she applied in 2018 and 2020, respectively.  (FAC, ¶¶ 30, 43-44.)  However, Plaintiff contentions that these were adverse employment actions—rather than her not being the most qualified candidate for these jobs—are belied by her own admissions that the company did, in fact, support her career growth by giving her the editor title she sought in August 2020, and promoting her to run her own editorial desk in September 2020.  (*Id.* ¶¶ 42, 45-46.)  Indeed, with respect to the Editor-in-Chief position, she makes no plausible articulation of how she was qualified to assume such a position, and seems to imply that because she was a native New Yorker and person of color with broadcast news experience, any decision not to give her the job would be discriminatory.  (*Id.* ¶¶ 43-44.)  Such an implication, devoid of any factual support, is not plausible.

Plaintiff's allegations regarding pay disparity are equally deficient on their face.  With respect to allegations of disparate treatment, Floyd must allege that the other employees "have a situation sufficiently similar to Plaintiff to support at least a minimal inference that the difference of treatment may be attributable to discrimination."  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).  Floyd's allegations fail to describe how she was similarly situated to other unidentified employees who were supposedly paid more, but worked on different shows than her, with different formats requiring different levels of effort, skills and role responsibilities, and who had different work experience and job performance.  (*Id.* ¶¶ 7, 32, 42, 101.)  These conclusory allegations fail to state an adverse action.

9275582

Furthermore, Floyd has failed to set forth any facts establishing a causal connection between any alleged adverse action and racially discriminatory animus.  Indeed, the FAC is devoid of any factual allegations that race played either a direct or indirect role in the alleged acts of which she complains.  "Naked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss."  *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018).  Plaintiff makes no attempt to allege how any of the employees outside of her protected class that she claims were treated more favorably than her were similarly situated to her in all other material respects.  *See Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 194 (E.D.N.Y. 2016).  Rather, the FAC simply adds naked assertions in an attempt to bolster her flawed claims.  (*See* FAC, ¶¶ 39, 41, 42 (adding allegations that conduct was "race-based" and "unlawful.")  As Plaintiff makes only conclusory allegations of discrimination, these claims must be dismissed.

## POINT III

### Plaintiff Fails to State a Claim for Retaliation
### Based on Race under 42 U.S.C. § 1981 and the NYSHRL

Plaintiff's retaliation claims pursuant to federal and state law similarly fail due to the conclusory nature of her allegations and her failure to plead a sufficient adverse employment action, as discussed above.  Retaliation claims under § 1981 and NYSHRL are analyzed pursuant to the *McDonnell Douglas* burden-shifting evidentiary framework.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  To establish a presumption of retaliation at the initial stage of litigation, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Id.* at 164 (internal quotation marks

9275582

omitted); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (Plaintiff must plausibly allege that: (1) defendant discriminated—or took an adverse employment action—against her, (2) 'because' she opposed any unlawful employment practice).   The superfluous use of the word "retaliation" in the FAC does not conceal the fact that Floyd has failed to plead (1) any plausible adverse action by Defendant against her, and (2) a causal connection between an adverse action and Floyd's participation in a protected activity.

As discussed above, Floyd's allegations fail to set forth facts sufficient to support a plausible actionable adverse employment action.  *See supra* Section II.  With respect to a causal connection, the FAC rotely alleges that Defendant retaliated against Plaintiff due to her complaints about discrimination and harassment in the workplace.  (*See* FAC, ¶¶ 7, 26, 28, 41, 44, 48, 49, 51.) Such conclusory assertions, devoid of any factual support, are insufficient to establish a causal connection.  *See Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 228–29 (E.D.N.Y. 2016) (conclusory allegations lacking in any supporting factual detail are insufficient to satisfy a plaintiff's pleading burden).  Accordingly, Plaintiff's federal and state retaliation claims must also be dismissed.

## POINT IV

### Plaintiff Fails to State Claims for Discrimination, Retaliation or Hostile Work Environment Based on Race under the NYCHRL

The Second Circuit has instructed that NYCHRL claims must be analyzed "separately and independently from any federal and state law claims."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Under the NYCHRL, the Plaintiff must establish that she "was subject to an unfavorable [employment] change or treated less well than other employees on the basis of a protected characteristic."  S*ee Golston–Green v. City of New York*, 184 A.D.3d at 38 (2d Dep't 2020).  However, "district courts must be mindful that the NYCHRL is not a 'general

19

civility code[;]' [t]he Plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110.  Accordingly, "to prevail on a retaliation claim under the NYCHRL, the Plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id*. at 112 (internal citations omitted).  While the totality of the circumstances must be considered, *see Mihalik*, 715 F.3d at 111, "petty, slight, or trivial inconveniences are not actionable."  *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (internal citations and quotations omitted).

Here, Plaintiff cannot, and does not, satisfy these standards.  The FAC makes no attempt to allege any factual support for the otherwise speculative allegations that any alleged adverse conduct Floyd complains of was caused by a discriminatory motive.  Moreover, Plaintiff's hostile work environment must also fail, even under the NYCHRL's less stringent standards, as the allegations do not rise to the level of unwanted race-based conduct.  *See, e.g., Bermudez*, 783 F.Supp.2d at 579.  Accordingly, Plaintiff's NYCHRL claims must also be dismissed.

## POINT V

### Plaintiff's Claims Based on Acts Prior to October 2018 Are Time-Barred under 42 U.S.C § 1981

In addition to the myriad pleading deficiencies of Plaintiff's claims, discussed above, the FAC suffers from other fatal flaws, including that several of Plaintiff's allegations fall outside of the applicable statutes of limitation.  The statute of limitations governing claims brought pursuant to § 1981 is four years.  *See Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 382 (2004) (concluding that cause of action under § 1981 is governed by § 1658's four-year statute of limitations).  The parties entered into a tolling agreement effective from Oct. 17, 2022.  Thus, any allegations or claims that accrued prior to October 17, 2018 (for claims with 4-year limitations

period) would be time-barred.  Courts routinely dismiss § 1981 claims which are filed beyond the limitations period.  *See Cates v. Trans World Airlines, Inc.* 561 F.2d 1064, 1073 (2d Cir. 1977) (dismissing Appellants § 1981 claims as time barred); *Russell v. County of Nassau*, 696 F.Supp.2d 213, 230 (E.D.N.Y. 2010) (dismissing Plaintiff's § 1981 claims arising more than four years prior to the filing of the complaint).

Here, Floyd makes the following allegations that fall outside of the 4-year period: (1) allegations that Schachter unsuccessfully sought to terminate her in 2017, allegedly because she complained about another host's sexual harassment of staff (FAC, ¶ 26); (2) allegations that she was promised the midday host position when it became vacant, but did not get this job in July 2018 because of her race and other alleged improper reasons (*id*., ¶¶ 28-31); (3) allegations that before October 17, 2018, Plaintiff was paid less than her non-Black counterparts (*id*., ¶¶ 7, 32, 42, 101); and (4) allegations regarding a workplace investigation conducted by Defendant's undersigned counsel, which occurred prior to October 2018 (*id.*, ¶ 33.).  In addition to being time-barred, the facts alleged by these allegations could not support any plausible claim of race discrimination, retaliation or hostile work environment due to race.  These allegations are irrelevant, time-barred, and intended only to be inflammatory.  As such, they should be stricken from the FAC and any claim they purport to serve as the predicate acts for should be dismissed.

## POINT VI

### Plaintiff's Claims Based on Acts Prior to October 2019
### Are Time-Barred under the NYSHRL and the NYCHRL

Claims under the NYSHRL, and NYCHRL are subject to a three-year statute of limitations. *See Taylor v. City of New York*, 207 F.Supp.3d 293, 301-02 (S.D.N.Y. 2016); N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8–502(d).  Thus, any allegations that occurred or claims that accrued prior to Oct. 17, 2019 (for claims with 3-year limitations period) would be time-barred

under state law.  This includes not only all of the allegations addressed in the immediately preceding section, but Floyd's other allegations of discrimination, retaliation or hostile work environment that occurred prior to October 17, 2019, such as allegations:  (1) of purported bullying, harassment and having a reporting structure that differed from non-Black hosts, which she claims to have complained about to Defendant's HR department on and before June 24, 2019 (*see* FAC, ¶¶ 4, 21, 39-40); and (2) concerning her inclusion in an editorial committee concerning Defendant's policy around use of the n-word in May 2019 (*id.* ¶ 36).  Plaintiff's repeated use of the phrase "during the applicable statute of limitations period" throughout the FAC does nothing to change the fact that these untimely allegations are not actionable.

## POINT VII

### The Continuing Violation Doctrine Does Not Apply to Plaintiff's Claims

Plaintiff cannot save her untimely claims by invoking the continuing violation doctrine. To do so, she would need to "show either (1) specific ongoing discriminatory policies, or (2) specific and related instances of discrimination that are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 79 (E.D.N.Y. 2002).  Due to the repeated nature of conduct sufficient to support a plausible hostile work environment claim, such acts could be a continuing violation.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  However, "[d]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."  *Id.* at 112.  Moreover, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 205 (E.D.N.Y. 2014) (quoting *Valtchev v. City of New York*, 400 F. App'x 586, 588–89 (2d Cir. 2010)).  For example, the United States Supreme Court has held that termination, failure to promote, denial of transfer, and refusal

to hire constitute discrete acts, and the continuing violations doctrine is inapplicable.  *See Morgan*, 536 U.S. at 114.  Similarly, the Second Circuit has held that alleged failures to compensate adequately, demotions, and discontinuance of job assignments cannot form the basis for a continuing violation claim.  *See e.g., Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019); *Pollis v. New Sch. For Social Research*, 132 F.3d 115, 119 (2d Cir.1997) (holding that a claim of discriminatory pay involves a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997) ("[A] job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature."); *Crosland v. City of New York*, 140 F.Supp.2d 300, 308 (S.D.N.Y. 2001) ("It is well-established that transfers, demotions, failure to compensate adequately, and failure to promote are all discrete acts which do not constitute a continuing violation").

Here, Floyd fails to allege either of the two elements of the continuing violation doctrine. First, as outlined above, Plaintiff fails in her attempt to plausibly allege incidents or conduct by Defendant that gives rise to a hostile work environment.  (*See supra* Section I.)  Second, Plaintiff's time-barred allegations concerning a purported attempt to terminate her (FAC, ¶ 26), failure to receive the midday host job (*id.*, ¶¶ 28-31), alleged unequal pay (*id.*, ¶¶ 7, 32, 42, 101), and her participation in an editorial committee (*id.* ¶ 36) are discrete, non-continuous acts, such that the continuing violation doctrine does not apply.  *See Davis-Garett*, 921 F.3d at 42; *Chin v. Port Auth. Of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012); *Pollis v. New Sch. For Social Research*, 132 F.3d 115, 119 (2d Cir.1997); *Lightfoot v. Union Carbide Corp.*, 110 F.3d at 907; *Crosland*, 140 F.Supp.2d at 308.

9275582

Accordingly, Plaintiff's claims concerning conduct prior to the applicable statute of limitations periods, whether based upon discrete acts or are alleged as part of her purported hostile work environment claims, are time-barred and should be dismissed.

## POINT VIII

### Plaintiff Fails to State a Claim for Pay Inequality under New York Labor Law § 194

New York's Equal Pay Act ("EPA") prohibits a differential rate of pay because of a protected class status.  To show discrimination under the EPA, the plaintiff must show that: (1) the employer pays different wages to employees of the opposite sex or race; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions.  *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001).

Plaintiff sets forth no facts regarding pay disparity based on race to plead a plausible claim. She makes conclusory allegations she was paid less than other non-Black radio show hosts, yet fails to describe how the work that was required for each show's host compared across effort, skill and responsibility, and relatedly, how the formats of the various shows were similar or different.

Other than Plaintiff's mere recital of the elements of the statute (*see* FAC, ¶¶ 7, 42, 101), she also claims that her salary of $160,000 to $176,000 during her time as local host for *All Things Considered* was "the same or less than staff who supported the *Brian Lehrer Show*" and that this was "considerably less than Caucasian talk show hosts."  (*Id.* ¶ 32.)  Her comparison to unidentified other employees, some in unknown roles, with unknown responsibilities, skills, and effort provides no facts whatsoever to support a plausible claim for pay inequality under the EPA. Accordingly, this cause of action should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff fails to state a claim for hostile work environment, discrimination, retaliation and a violation of the New York Labor Law against Defendant NYPR. Accordingly, Defendant respectfully requests that its motion to dismiss Plaintiff's First Amended Complaint be granted in its entirety with prejudice.

Dated: August 25, 2023
    New York, New York

                       Respectfully submitted,

                       KAUFMAN BORGEEST & RYAN LLP

                       _____
                       Joan M. Gilbride
                       Erica Bianco
                       *Attorneys for Defendant*
                       875 3rd Ave, 5th Floor
                       New York, New York 10022
                       Telephone: (212) 980-9600
                       E-mail: jgilbride@kbrlaw.com
                                    ebianco@kbrlaw.com

TO:    (VIA ECF)

    Edward Cerasia II
    *Attorneys for Plaintiff*
    101 Eisenhower Parkway, Suite 300
    Roseland, New Jersey 07068
    Telephone: (646) 525-4231
    ed@cdemploymentlaw.com

9275582